# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| **ROSLYN PERRYMAN, and** | ) | |
| | ) | |
| **STEPHEN PERRYMAN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **HOTEL WETUMPKA AL, LLC (dba, HAMPTON INN, WETUMPKA), and,** | ) | |
| | ) | |
| **HILTON DOMESTIC OPERATING COMPANY, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

COME NOW Plaintiffs Roslyn Perryman and Stephen Perryman ("Plaintiffs" or "the Perrymans"), a married couple, by and through undersigned counsel and file this Complaint seeking judgment against Defendant Hotel Wetumpka AL, LLC, dba Hampton Inn and/or Hampton Inn by Hilton, ("Hampton by Hilton"); Defendant Hilton Domestic Operating Co., Inc. ("Hilton") (collectively, "Defendants"), state as follows:

## INTRODUCTION

This is a race discrimination case in public accommodations under Title II of the Civil Rights Act of 1964 and in the right to contract under 42 U.S.C. § 1981. Plaintiffs bring this action seeking redress against and accountability arising from Defendants' joint and several acts of race discrimination. Plaintiffs also allege the tort of outrage.

## JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction over Plaintiff's federal claim pursuant to 28 U.S.C. § 1331 and § 1343(a)(4). The Court has supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b), because Defendant Hilton resides and does business in the Southern Division of the Northern District of Alabama and because a substantial part of the claim occurred within in the Southern Division of the Northern District of Alabama, where both Plaintiffs reside.

## PARTIES and GENERAL BACKGROUND

3. Plaintiff Roslyn Perryman is a Black woman. She is employed by a contract administrator for various HUD-based apartments in the Birmingham, Alabama, area.

4. Plaintiff Stephen Perryman is a Black man. He is employed by a pharmaceuticals manufacturer which produces various medicines.

5. Plaintiffs are married and, with their son and daughter, reside in Jefferson County, Alabama.

6. Defendant Hampton by Hilton's is a limited liability company whose name is registered with the Alabama Secretary of State's Office as "Hotel Wetumpka AL, LLC," whose organizer resides in Montgomery County, Alabama, and whose primary place of business is located in Wetumpka, Elmore County, Alabama.

7. Upon understanding and belief Defendant Hampton by Hilton is a Hilton

Domestic Operating Company, Inc., franchise.

8. Defendant Hilton Domestic Operating Company, Inc., is a corporation incorporated under the laws of the State of Delaware that maintains its principal office in the Commonwealth of Virginia. Hilton is engaged in the overall operation, management, policy-making, oversight and franchising of various hotels and hotel brands, including the Hampton by Hilton line of franchises, which includes Defendant Hampton by Hilton in Wetumpka, Alabama.

9. At all times relevant to the facts set forth in this Complaint, Defendant Hilton regularly conducted business in the State of Alabama.

10. Upon information and belief, the Defendant Hampton by Hilton is Defendant Hilton's franchise.

11. Both Defendants own and/or operate and/or oversee and/or make policies for and/or derive income from the operations of the Hampton by Hilton hotel in Wetumpka, Alabama.

12. The Hampton by Hilton in Wetumpka offers accommodations to the public.

13. At all times relevant to this Complaint, Defendant Hampton by Hilton employed a white woman whose name is currently unknown as a front desk night manager ("Night Manager"). At all times relevant hereto, this Night Manager was an agent, representative and employee of Hampton by Hilton.

14. At all times relevant to this Complaint, Defendant Hampton by Hilton

employed Samantha Hall ("Ms. Hall") as its General Manager. At all times relevant hereto, Ms. Hall was an agent, representative and employee of Hampton by Hilton.

15.  At all times relevant to this Complaint, both the Night Manager and Ms. Hall acted within the line, course and scope of their employment with Defendant Hampton by Hilton.

16. Defendant Hilton follows general hotel chain and franchise industry standards regarding its relationship with its franchisess ("Industry Standards"), including its Wetumpka, Alabama, franchise, Defendant Hampton by Hilton.

17. Industry Standards include, but are not limited to, hotel franchisors providing their respective franchisees with hotel owner's operations guidance; policies; training standards and manuals; and, at the franchisor's option, certain hiring, supervision and training policies and practices; as well as other overall hotel and brand guidance, software, training-related and other materials for operations of the franchisee hotel.

18. While Defendant Hampton by Hilton may conduct day-to-day operations of the Wetumpka Hampton Inn, it looks to and relies upon its franchisor, Defendant Hilton (as well as any Hilton parent and/or affiliated companies), for its overall and overarching operations guidance, standards and practices.

19.  At all times relevant hereto, both Defendants maintained a policy, practice or custom of allowing their front desk managers an amount of discretion to racially profile Hampton by Hilton would-be guests, that is, invitees, present in the Hampton by Hilton

lobby and, if such front desk managers – such as the Night Manager in the present action – were disinclined to accommodate Black guests and other invitees, tell such Black guests that the Hampton by Hilton's got "no rooms for *you*," or even allow such guests and other invitees to use the lobby restrooms.

20.   Accordingly, such policy, practice or custom of Defendants Hilton and/or Hampton by Hilton, put into practice by the Night Manager as described herein, make Defendants are directly liable for their violations of Title II of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, and Alabama tort violations set forth herein.

21.   To the extent either or both Defendants are not directly liable for the Federal Law-violative and tortious acts and omissions of the Night Manager, they are vicariously liable under a theory of *respondeat superior*.

22. In connection with Plaintiffs and the circumstances described herein, the Night Manager, Ms. Hall, and Defendant Hampton by Hilton all acted as the actual or apparent agent/s of Defendant Hilton. Plaintiffs believed and understood they were doing business with both Hampton by Hilton and the owner of the brand name "Hilton," which is Defendant Hilton. The Wetumpka hotel's front sign reads:  "Hampton by Hilton."

23. Defendants offer public accommodations at a Hampton by Hilton hotel in Wetumpka, Alabama, as the Hampton Inn and/or Hampton by Hilton located at 350 S Main Street Wetumpka Alabama 36092.

24. On October 11, 2021, Defendants – by and through their agent and

representative – refused Plaintiffs the use and enjoyment of the benefits, privileges, terms and conditions that they extend to all other similarly situated guests and other invitees. Defendants breached their contract and covenant of good faith and fair dealing with Plaintiffs because of their race, Black, discriminating against them in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981; 42 U.S.C. § 2000(a) (Title II of the Civil Rights Act of 1964); and perpetrated intentional infliction of emotional distress (also known as the tort of outrage) against Plaintiffs.

## STATEMENT OF FACTS

25. For several days prior to October 11, 2021, incident date, Plaintiffs, the Perrymans, their 15-year-old daughter, and 11-year-old son, had been visiting relatives in Atlanta, Georgia.

26. Plaintiffs decided not to return directly from Atlanta to Birmingham, but, instead, first travel to Wetumpka, Alabama, where Ms. Perryman had family, so they could visit with them, then return to Birmingham.

27. Plaintiffs left Atlanta late in the evening and drove through the night, into the early morning, hoping to stay at a hotel in Wetumpka, grab a few hours sleep, then visit with family on October 11, then on October 12, 2021. Mr. Perryman was driving.

28. Not too long outside of Wetumpka, around 2:30-2:45 a.m. on the morning of October 11, 2021, Ms. Perryman looked-up and called Hilton's / Hampton Inn's customer service line to confirm that the Wetumpka Hampton by Hilton had rooms

available and that her family could get a room that night / early morning.

29. The Hilton / Hampton Inn customer service representative confirmed that rooms were available at the Wetumpka Hampton by Hilton that there should be no issue with getting a room for the Perrymans and their two children.

30. Mr. Perryman drove on to the Wetumpka Hampton by Hilton, parked in front of the lobby, and stayed in the Perryman's car with their children while Ms. Perryman went inside to secure a room.

31. As the Perrymans had been on the road for more than two (2) hours, and as it was about 3:00 a.m. in the morning of October 11, 2021, they were looking forward to securing a room, using its restroom, winding down and getting some sleep.

32. When Ms. Perryman entered the Hampton by Hilton lobby she saw only one person, the Night Manager, at the front desk. Ms. Perryman approached as said, "Good evening. How are you?" or words of greeting to that effect.

33. The Night Manager looked Ms. Perryman up and down. If the Night Manager said anything, Ms. Perryman did not hear it. Ms. Perryman saw only a look of hostility, disgust and judgment on the Night Manager's face. The Night Manager just stared at Ms. Perryman.

34. Both objectively and subjectively, it was apparent that the white Night Manager did not like Ms. Perryman, a Black woman, walking up to the Hampton by Hilton's front desk at night.

35.  Ms. Perryman continued on, though, starting to tell the Night Manager know that the Perrymans would like to secure a room until Wednesday, October 13, but before Ms. Perryman could complete her sentence the Night Manager cut her off, telling Ms. Perryman the hotel had no rooms "for *you*."

36. The Night Manager made it clear to Ms. Perryman that it was not a matter of having no vacancies at the Hampton by Hilton, but, rather, that there were no rooms available for Ms. Perryman and her family, who were Black.

37. Ms. Perryman was stunned. The Night Manager just stood there, matter of factly.

38. Ms. Perryman asked if she could at least use the women's room, the restroom, off the lobby. The Night Manager said the restroom was out of order. The restroom was not out of order.

39. Defeated, demoralized, and still needing a restroom, Ms. Perryman left the lobby and returned to the family car.

40. In short order Ms. Perryman told Mr. Perryman what had happened. She then suggested Mr. Perryman go inside and ask the Night Manager if *he* could at least use the men's restroom (and, if so, pave the way for the Perryman's children to use the restroom).

41. Mr. Perryman left the family car, walked into the lobby and ask the Night Manager if he could use the restroom. The Night Manager refused to let Mr. Perryman

use the restroom. Mr. Perryman was not dressed as a vagabond, but he was Black.

42. Mr. Perryman left the Hampton by Hilton lobby and returned to the Perryman's vehicle.

43. The Perrymans, feeling devastated, just decided to drive back up to Birmingham and forego seeing their Wetumpka relatives.

44. As the Night Manager, besides not allowing this Black family to secure a hotel room, had also refused to let them use the lobby restrooms, the Perryman's soon found and pulled into "Patriot Fueling Center" in Wetumpka and the family used that gas station's restrooms.

45. The Perrymans arrived at their home in Birmingham, Alabama, around 4:30 or 5:00 a.m., exhausted and demoralized.

46. On the afternoon of October 11, from her home in Birmingham, Ms. Perryman telephoned the Wetumpka Hampton by Hilton and spoke with General Manager Samatha Hall about what had occurred earlier that day in Wetumpka.

47. During her telephone call with Ms. Hall, Ms. Perryman described what happened, about the Night Manager refusing to allow Ms. Perryman (and her family) to secure a hotel room at the Wetumpka Hampton by Hilton.

48. During her telephone call with Ms. Hall, Ms. Perryman described how the Night Manager refused to allow her, then her husband, to use the lobby restrooms. Ms. Perryman even told Ms. Hall that she, Ms. Perryman, had been in a tight to use the

restroom, but that the Night Manager had refused even that.

49. Ms. Hall admitted that as far as she knew the restrooms were working.

50. During her telephone call with Ms. Hall, Ms. Perryman told Ms. Hall she, Ms. Perryman, picked-up on the Night Manager's "very racist vibe," and that she could tell that the Night Manager was "stereotyping" her, or words to that effect. Ms. Perryman tried to explain to Ms. Hall how demoralizing the incident was to both her and her family.

51. During the phone call, Ms. Hall did not deny racism to Ms. Perryman or express any shock at one of her night managers being racist.

52. Ms. Hall conceded that, owing to being white, she could not "understand" what Ms. Perryman and her family had been through, but that she sympathized with the Perrymans being turned away from an Alabama hotel, and restrooms, owing to the color of their skin.

53. Ms. Hall took down Ms. Perryman's phone number and said she would "investigate" the matter and get back with Ms. Perryman.

54. Within one or two days of their initial telephone conversation, Ms. Hall telephoned Ms. Perryman in Birmingham, a continuation of October 11 incident.

55. During this follow-up telephone conversation, Ms. Hall admitted that there had been rooms available when the Perrymans had tried to secure one at the Hampton by Hilton on October 11, 2021; she likewise conceded through silence that no lobby area

restroom had been out of order when the Perrymans were at the Hampton by Hilton.

56. In her follow-up call with Ms. Perryman, Ms. Hall did not deny racism was the cause, or a motivating factor, in the Perrymans being refused a room at the Wetumpka Hampton by Hilton on October 11, 2021; Ms. Hall offered the Perrymans a stay at the Wetumpka Hampton by Hilton for their "inconvenience."

57. The Night Manager offered no explanation for refusing to allow the Perrymans – Defendant Hampton by Hilton invitees – to secure a room on October 11, 2021, only that she had no rooms available "for *you*."

58. There were, in fact, rooms available at the Wetumpka Hampton by Hilton on October 11, 2021.

59. The Night Manager lied to Ms. Perryman – a Defendant Hampton by Hilton invitee – when she said the lobby restroom  was out of order; it was not.

60. With no other reasonable, let alone plausible, reasons left, the Night Manager's refusing to allow Plaintiffs – Defendant Hampton by Hilton invitees – to book a room at the Wetumpka Hampton by Hilton or even use the lobby restrooms, was because of the Perrymans' race, Black.

61. Given the facts as described, reasonable and objective persons could conclude that but for the Perrymans' race, Black, the Wetumpka Hampton by Hilton – by and through its employee, agent and representative – would not have refused to allow Ms. Perryman, an invitee, to enter into a contract with Hampton by Hilton to book a hotel

room on October 11, 2021.

62. Given the facts as described, reasonable and objective persons could conclude that the Perrymans' race, Black, was at least a motivating factor in the Wetumpka Hampton by Hilton – by and through its employee, agent and representative – refusing to allow Ms. Perryman, an invitee, to book a hotel room on October 11, 2021.

63. Given the facts as described, reasonable and objective persons could conclude that the Perrymans' race, Black, was at least a motivating factor in the Wetumpka Hampton by Hilton refusing to allow either of the Perrymans, who were invitees, to use the hotel restroom on October 11, 2021, and/or that but for the Perrymans' race, Black, Defendant Hampton by Hilton would not have refused their and their family's use of the facilities.

64. Defendants interfered with the Perrymans' ability to contract for a room at the Wetumpka Hampton by Hilton and interfered with their enjoyment of guest facilities made available to all other hotel guests and invitees, because of their race, Black.

65. Defendants denied the Perrymans the use and enjoyment of the same accommodations, privileges, and benefits that it grants to other similarly situated would-be hotel guests and invitees who are not Black.

66. As a result of the Defendants' unlawful actions described above, Plaintiffs suffered, continue to suffer, and will in the future suffer irreparable loss and injury, including but not limited to humiliation, embarrassment, emotional distress and trauma,

feelings of racial stigmatization, an increased sense of vulnerability, and unlawful deprivation of their federally protected rights to exercise and enjoy equal treatment in the making and enforcing of contracts in places of public accommodation and having full access to and enjoyment of places of public accommodation without regard for race and/or color.

67. As of October 2021 an Alabama hotel's refusing to allow a Black family to book a room because of the color of their skin is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. But this is exactly what Defendants did to the Perrymans.

68. As of October 2021 an Alabama hotel's refusing to allow a Black family (who are trying to book a room for the evening) the use of the lobby restrooms because of the color of their skin is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. But this is exactly what Defendants did to the Perrymans.

69. Defenants' above-described outrageous acts and omissions proximately caused the Perrymans to suffer, and they will continue to suffer, irreparable loss and injury, including but not limited to humiliation, embarrassment, emotional distress, feelings of racial stigmatization, an increased sense of vulnerability in Alabama, whose state motto remains "The Heart of Dixie."

**Defendant Hilton's Recent Track Record**

70. The above-described incident is not an isolated one and Defendant Hilton has been on notice that such racism is an issue and problem at its and its franchisees' respective properties.

71. Defendant Hilton has a recent history of similar incidents involving Black guests and invitees at Hilton and Hilton franchise hotels throughout the United States.

72. In recent years Hilton employees, agents and apparent agents have actually used security guards and local police to challenge and remove Black guests and/or invitees from Hilton and Hilton franchise properties. Similarly situated white guests and invitees on Hilton and Hilton franchise properties were not treated in a similar manner.

73. Defendant Hilton owns and operates nationwide hotel franchises that offer public accommodations, including hotel lodging, to paying consumers.

74. A series of recent incidents demonstrate that Defendant Hilton is maintaining an federal law-violative policy, custom or practice of profiling Black guests and/or invitees present in the lobbies of Defendant Hilton's various hotel franchises. Security agents of Defendant Hilton's hotels have accosted Black guests on several occasions and either demanded such guests leave, or demanded that these Black guests / invitees show proof of their status as a hotel guest.

75. On December 22, 2018, a Black man named Jermaine Massey ("Mr. Massey") was a guest at the DoubleTree Portland. The DoubleTree Portland is a hotel in Oregon

14

owned and operated by Defendant Hilton. Mr. Massey was seated in the public lobby and speaking on his cell phone to his mother.

76. While Mr. Massey was speaking to his mother, a security guard employed by Defendant Hilton confronted Mr. Massey and demanded he provide his room key. The security guard then threatened Mr. Massey, telling him he, the security guard, would call the police because Mr. Massey was "loitering." Other white guests were present in the lobby but were not similarly confronted by the security guard.

77. The security guard then contacted the hotel manager, who in turn called the police. The security guard and hotel manager demanded that the police remove Mr. Massey from the premises, notwithstanding that Mr. Massey was lawfully on the premises as a paying guest.

78. The police arrived and escorted Mr. Massey off the premises, which resulted in mental anguish, humiliation, and embarrassment to Mr. Massey.

79. While not knowing of Mr. Massey's traumatic experience, the Perrymans nevertheless made sure not to press the issue of room, or lobby area restroom, availability with the Night Manager: As Black residents of Alabama, they were all too well aware that if they pressed the issue the odds were good that the Night Manager would call the police on them – which no Black family wants in the middle of Alabama in the early morning hours. Both a desire not to escalate and fear of the implications of pressing their rights resolved them to just get in their car and get away from the

Wetumpka Hampton by Hilton, demoralized, defeated, and physically suffering owing to their need of restroom facilities.

80. On October 27, 2018, Mr. Richard Wilcock, a Black man, named checked into the Hampton Inn and Suites Nashville-Vanderbilt-Elliston Place as a paying guest. That hotel is owned and operated by Defendant Hilton.

81. Mr. Wilcock, accompanied by his son, retrieved menus from the hotel's front desk. Mr. Wilcock then ordered food and waited in the lobby for the food to arrive.

82. As Mr. Wilcock was sitting in the lobby, a hotel manager asked Mr. Wilcock if he was a guest. Mr. Wilcock answered that he was.

83. The hotel manager then demanded that Mr. Wilcock state his name and room number.

84. As there were white guests also present in the lobby, Mr. Wilcock asked the hotel manager why he was being singled out. The manager responded by leaving and returning with a security guard.

85. The security guard, who was an African-American male, advised Mr. Wilcock to "just go along with it" because the hotel manager "does this sometimes." The manager then told Mr. Wilcock and the security guard that she wanted Mr. Wilcock removed from the hotel.

86. A hotel employee or actual or apparent agent then called the police on Mr. Wilcock.

16

87. On March 4, 2018, Mr. Albert Law, who is Black, checked in to the Hilton Richmond Downtown using a reservation Mr. Law had made as a Hilton Honors member.

88. After checking in to the hotel, Mr. Law went to the lobby to wait for a colleague.

89. As he waited in the Hilton lobby, a security employee approached Mr. Law, and, acting as an agent or employee of Hilton, several times asked Mr. Law whether he "belonged there [or here]."

90. The security employee repeatedly demanded that Mr. Law produce his identification and room key to prove that he "belonged" at the hotel.

91. Hilton's other employees, agents, or apparent agents did not ask any other persons in the Hilton lobby – white persons, presumably guests or invitees – to provide identification or their room keys.

92. The only difference between Mr. Law and the other guests and other invitees was the color of his skin.

93. Upon information and belief, similar incidents involving Defendant Hilton and its franchisees and affiliates have occurred elsewhere across the United States. The aforementioned incident involving the Perrymans being refused a room and use of the lobby facilities, and – in two (2) telephone calls with Ms. Perryman in Birmingham – the General Manager not denying racism as being at the root of it all, evinces a continuing

pattern a practice of Defendant Hilton failing or refusing to develop and/or disseminate policies and guidelines for its and its franchisees' hotels, and/or maintain a modicum of supervision over its and its franchisees' owners and managers in order to prevent such seeming widespread racism at Hilton and Hilton franchise hotels.

94. Defendant Hilton provides its hotel franchisees with various operations "Standards," which to an exacting degree it requires its franchisees to adhere and comply; yet – up to a point – it allows its franchisees to determine their own respective personnel policies or procedures. Still, Hilton also maintains the right and option to make personnel policies (including those regarding general rules, expected behaviors, guest relations and services standards, employee training, and the like) "available" to its franchisees.

95. In its relations and various contractual requirements with its franchisees, Hilton requires various branding, software (proprietary computerized business system), design, architecture, and the like, compliance; Hilton dictates these rules, requirements and standards to its franchises to an exacting degree, while simultaneously maintaining loose, optional, or no "standards" regarding its franchisees' management and staff and their compliance with Title II and other racism-prohibiting Civil Rights statutes and civilized society norms.

96. The facts set forth in Paragraphs 93-95 show Defendant Hilton intent on maximizing operational control over its franchisees, while intentionally, purposefully,

turning its back on, and/or opting out of, setting standards for its franchisees complying with various Civil Rights laws, namely those prohibiting racism at Hilton-brand franchises – franchises from which Hilton annually derives hundreds of millions of dollars in profit.

97.  Notwithstanding the facts set forth in the foregoing Paragraph 93-96, Hilton reviews and approves or disapproves its respective franchisee's management.

98.  Hilton's aforementioned acts and omissions – in sum, turning a blind eye to racism within its and its franchisees' hotels – intertwined with those perpetrated by the Wetumpka Hampton by Hilton, proximately caused the violations of both federal law and Alabama tort law and, in turn, proximately caused Plaintiffs to suffer the damages described herein.

## COUNT I

### Title II of the Civil Rights Act  – 42 U.S.C. § 2000a

99.   By this reference Plaintiffs incorporate the foregoing allegations of this Complaint as if fully set forth herein.

100. Plaintiffs are Black and therefore entitled to the Equal Access protections guaranteed by and under 42 U.S.C. § 2000a(a).

101. At all relevant times hereto, Defendants were an "inn, hotel, motel, or other establishment which provides lodging to transient guests" within the meaning of 42 U.S.C. § 2000a(b)(1). Defendants operations affect interstate commerce.

102. At all times relevant hereto, Plaintiffs were transient guests within the meaning of 42 U.S.C. § 2000a(b)(1).

103. Plaintiffs attempted to booked and secure lodging with Defendant Hampton by Hilton on October 11, 2021.

104. By using the lobby and engaging the Night Manager in both an attempt to secure lodging for the night (and at least one night thereafter) and asking to use the lobby facilities as invitees / transient guests, Plaintiffs attempted to exercise the right to full benefits and enjoyment of a place of public accommodation (that is, lodging, and the lobby's facilities).

105. Plaintiffs were treated less favorably than similarly situated persons who were not members of the protected class. Plaintiffs and their children were refused lodging and use of the lobby facilities. The only difference between Plaintiffs and those allowed to secure rooms and use the lobby was the color of Plaintiffs' skin.

106. Defendants denied Plaintiffs the benefits and enjoyment of the place of accommodation (that is, lodging and the hotel lobby's facilities). Defendants denied Plaintiffs the right to peacefully use and enjoy the Hampton by Hilton's hotel rooms and common areas of the hotel.

107. At all times relevant hereto the Night Manager was an agent and employee of Defendant Hampton by Hilton and acted within the course and scope of her employment with Defendant Hampton by Hilton.

108. At all times relevant hereto, Defendant Hilton maintained a policy, custom or practice of allowing its franchise owners and operators to profile Black invitees of its various hotel franchises; and/or it maintained a policy, custom or practice of failing or refusing to develop and disseminate to its franchisee owners and operators standards, policies, guidelines, hiring and training manuals, and the like, that would prevent profiling, stereotyping and other race discrimination at its franchises.

109. Thus Defendants Hilton and/or Hampton by Hilton are directly liable for the unlawful acts and omissions perpetrated by Hampton by Hilton's Night Manager, who refused to allow Plaintiffs use and enjoyment of the Wetumpka, Alabama, Hampton by Hilton.

110. To the extent either Defendant is not directly liable for the unlawful and tortious acts and omissions of the Night Manager, they are vicariously liable under a theory of *respondeat superior.*

111. Defendants' individual unlawful policies, customs and/or practices described herein was the moving force behind privations Plaintiffs suffered.

112. Defendants, jointly and severally, denied Plaintiffs the full use and equal enjoyment of the services of a place of public accommodation on the basis of their race, in violation of Title II of the Civil Rights Act of 1964 (42 U.S.C. § 2000a).

113. Defendants' joint and several unlawful acts proximately caused Plaintiffs each to suffer future suffer irreparable loss and injury, including but not limited to

humiliation, embarrassment, emotional distress and trauma, feelings of racial stigmatization, an increased sense of vulnerability, and unlawful deprivation of their federally protected rights to exercise and enjoy equal treatment in places of public accommodation and having full access to and enjoyment of places of public accommodation without regard to their race and/or color.

## COUNT II
### To Make and Enforce Contracts – 42 U.S.C. § 1981

114. By this reference Plaintiffs incorporate the foregoing allegations of this Complaint as if fully set forth herein.

115. Plaintiffs are Black and are therefore members of a protected class under 42 U.S.C. § 1981.

116. Plaintiff Roslyn Perryman sought to secure lodging, a room for her family, at Defendant Hampton by Hilton for October 11, 2021, then October 12, checking out on October 13, 2021. Plaintiff sought and attempted to enter into a contract with Defendant Hampton by Hilton whereby in consideration of the contract price paid, this Defendant would provide Plaintiffs and their children with public accommodations, including to peacefully use and enjoy the common areas of the hotel.

117. Hampton by Hilton had rooms available on October 11 and 12, 2021 and Plaintiffs met the hotel's standard requirements for occupancy. They were able and

willing to pay the contract price for the lodging, and did nothing disruptive that would have warranted being denied lodging. Plaintiff Roslyn Perryman was polite and pleasant to the Night Manager when the Night Manager scowled at her, looked at her in a way that "gave off a racist vibe" and refused to allow Ms. Perryman to secure lodging for her family.

118. Rooms were available, as confirmed both by a Hampton reservations line Ms. Perryman called and by General Manager Samantha Hall in follow-up telephone conversations with Ms. Perryman in Birmingham.

119.  When Ms. Perryman mentioned race as the reason for her and her family's treatment on October 11, Ms. Hall never denied that that was the cause of the privations and discrimination the Perrymans suffered. In fact Ms. Hall told Ms. Perryman that she sympathized with Ms. Perryman having to go through what she did at the hands of the Wetumpka Hampton by Hilton Night Manager.

120. By refusing to allow Plaintiffs to secure lodging for the night, and refusing to allow them, as invitees desiring to enter into a contract with the Wetupka hotel, to secure lodging or even use the lobby restrooms, Defendants, jointly and severally, denied Plaintiffs the right to peacefully use and enjoy the hotel and the hotel's common areas. But for their race, Black, Plaintiffs would not have been subjected to these privations and unlawful acts perpetrated by Defendants.

121. By discriminating against Plaintiffs on the basis of their race, Defendants

have denied Plaintiffs the same right to enjoy the benefits, privileges, terms, and conditions of contract as is, and was, enjoyed by white citizens, in violation of Plaintiffs' rights under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

122.    To the extent that Defendants Hilton and/or the Hampton by Hilton Defendants are not directly liable for the unlawful and tortious acts and omissions of Defendant Hampton by Hilton's Night Manager, they are vicariously liable under a theory of *respondeat superior*.

123.    Defendant Hilton's policy, custom or practice of allowing its franchise owners and operators to profile Black invitees of its various hotel franchises; and/or its policy, custom or practice of failing or refusing to develop and disseminate to its franchisee owners and operators standards, policies, guidelines, hiring and training manuals, and the like, that would prevent profiling, stereotyping and other race discrimination at its franchises, was a, if not the, moving force behind the privations and damages Plaintiffs suffered.

124. As a direct and proximate result of Defendants' heretofore described unlawful and tortious conduct, Plaintiffs each suffered severe mental anguish and emotional harm.

## COUNT III
## Intentional Infliction of Emotional Distress

125. By this reference Plaintiffs incorporate the foregoing allegations of this

Complaint as if fully set forth herein.

126. The Wetumpka Hampton by Hilton's white Night Manager refused to allow the Perrymans lodging for the night because of the color of their skin. When Ms. Perryman asserted this to General Manager Samantha Hall, Ms. Hall did not deny this.

127. The Night Manager was motivated by racism, racial animosity.

128. Depending on a person's age, the culture of "Whites Only" lodging and "White" and "Colored" restrooms remain part of the actual, or certainly cultural memory of Black Alabamians, even if some Caucasians seek to collectively ignore, forget, or dismiss the horrors of Jim Crow, or hold the laws enacted during the Civil Rights Era in contempt.

129. A callous Caucasian Night Manager denying a Black family lodging, or even the use of a hotel's facilities when they were invitees, is a traumatic thing for most any Black person, perhaps especially in Alabama. And this is exactly what happened to the Perrymans on October 11, 2021, as confirmed – or at least did not deny – by Ms. Hall in her subsequent telephone conversations with Ms. Perryman over the course of the following 24-48 hours.

130. As Defendant Hampton by Hilton's agent, representative and employees, and acting within the course and scope of her authority, the Night Watchman perpetrated an act against the Perrymans so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly

intolerable in a civilized society.

131.  Defendant Hilton's aforementioned acts and omissions regarding its policies, customs, practices, contributed to and/or were the moving force behind this outrage.

132. Defendant Hampton by Hilton failed to hire a non-racist Night Manager, and or failed or refused to train and supervise this manager in order to prevent its agent's / employee's acts perpetrated against the Perrymans on October 11, 2021, confirmed during the course of Ms. Perryman's and Ms. Hall's telephone conversations over the following 24-48 hours.

133. To the extent Defendants are not directly liable for the above-described tortious acts and omissions of the Night Manager, they are vicariously liable under a theory of *respondeat superior*.

134. By subjecting Plaintiffs and their children to the racism described  herein, Defendants perpetrated the tort of intentional infliction of emotional distress, also known as outrage.

135. As a direct and proximate result of the tortious conduct set forth in this Count III, Plaintiffs each suffered severe mental anguish and emotional harm.

### REQUEST FOR RELIEF

WHEREFORE, THE PREMISES CONSIDERED, Plaintiffs respectfully request trial by struck jury and that the Court grant the following relief:

A. Enter a declaratory judgment finding that the foregoing actions of the

Defendants violate the Civil Rights Act of 1866, 42 U.S.C. § 1981, and 42 U.S.C. § 2000(a);

B. Enter injunctive relief forbidding Defendants from refusing lodging to persons based on their race;

C. Enter injunctive relief requiring <u>both</u> Defendants develop policies, procedures, training, oversight, guidelines, protocols, hiring and training practices that will prevent or at least mitigate the chances of such Title II-violative acts going forward in these Defendants' respective and intertwined businesses;

D. Award compensatory damages to each Plaintiff and against Defendants, jointly and severally, in a amounts to be determined by a jury that would fully compensate Plaintiffs' humiliation, embarrassment and emotional distress caused by Defendants' unlawful and tortious conduct as set forth in Counts II and III.

E. Also regarding Counts II and III, award punitive damages to each Plaintiff and against Defendants, jointly and severally, in amounts to be determined by the jury that would punish Defendants for the willful, wanton, and reckless conduct alleged herein and that would effectively deter similar conduct in the future.

F. Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000(a) and 42 U.S.C. § 1981.

G. Award any other relief in law or equity as the Court deems just.

Respectfully filed on this, the  31st  day of January, 2022.

s/ Richard R. Newton
Richard R. Newton,
 Attorney at Law, P.C.
Counsel for Plaintiffs
1203 Regal Avenue
Birmingham, AL  35213
Tel:  (205) 356-2498
richardrussellnewton@gmail.com
ASB-0776-w85r

Served by Personal Service / Process Server:

On Defendant HOTEL WETUMPKA AL, LLC (dba, HAMPTON INN, WETUMPKA and/or HAMPTON INN BY HILTON):

Kishor Desai, Registered Agent
9232 Prentiss Court
Montgomery, AL  36117

On Defendant HILTON DOMESTIC OPERATING COMPANY, INC.,

Registered Agent
Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL  36104